The Honorable Phil Wyrick State Representative 11001 Alexander Road Mabelvale, AR 72103-1905
Dear Representative Wyrick:
This is in response to your request for an opinion on several questions regarding improvement district taxes. Your questions are restated and addressed below in the order posed:
1. If there is a foreclosure on a piece of property in an improvement district, does the improvement district have to pay the real estate taxes?
Assuming that by "foreclosure" you mean the improvement district's foreclosure on land for the collection of delinquent improvement district assessments and its purchase of the property, it is my opinion that the answer will likely depend, as a practical matter, upon when the foreclosure occurred in relation to the state's lien for general taxes. If the improvement district acquires title before the state tax lien attaches,[1] it seems clear that the land is not subject to state taxes as long as it remains the property of the district and is used exclusively for public purposes. See, e.g., Off-Street Parking Devel. Dist. No. 1 v. City of Fayetteville,284 Ark. 453, 682 S.W.2d 229 (1985); Terry v. Starks,221 Ark. 870, 256 S.W.2d 545 (1953); Deniston v. Burroughs, 209 Ark. 436,190 S.W.2d 623 (1945); Duncan v. Board of Directors of Newport Levee District, 206 Ark. 1130, 178 S.W.2d 660 (1944); Lyle v. Sternberg, 204 Ark. 466, 163 S.W.2d 147 (1942). The Arkansas Supreme Court has consistently held that in that instance, the property is exempt from general taxation. As stated in Lyle, supra:
 This court has held that when a drainage or improvement district acquires title to lands before the lien for state and county taxes becomes fixed, they are exempt from taxation or assessment for state and county taxes as long as the lands remain the property of said district as during that time they are held by the drainage or improvement district as a governmental agency and for governmental purposes.
204 Ark. at 468.
If, however, the state's lien attaches before the district acquires the property through foreclosure, then the district's title will be subject to the state's paramount lien. See A.C.A.14-86-1601. The property would, in that instance, be subject to sale by the state for the delinquent taxes. Although the property would remain subject to improvement district assessments (see generally Miller v. Watkins, 194 Ark. 863, 111 S.W.2d 466 (1938), payment of the general taxes by the district would, it seems, be necessary in that instance in order for the district to retain title. See Robinson v. Indiana Ark. Lumber Mfg. Co.,128 Ark. 550 (1917) (holding that where general taxes had become a fixed lien before the land was purchased by the levee district, the land was not released from liability for those taxes).
2. If a piece of property is located in an improvement district and a municipality acquires the property, does the municipality have to pay the improvement taxes?
It is my opinion that the answer to this question will depend upon the particular statute under which the improvement district assessments are levied, and upon whether the property is being used exclusively for public purposes. While it is clear that the constitutional tax exemption for "public property used exclusively for public purposes" (Ark. Const. art. 16, 5) refers to general taxes and not special assessments for local improvements,[2] the Arkansas Supreme Court has stated that "the same public purpose exemption extends to improvement district assessments unless a statute provides otherwise." Off-Street Parking Devel. Dist. No. 1, 284 Ark. at 455. The cases cited in Off-Street Parking indicate that where there is no inference in a statute that the legislature intended to include public property in the real property to be assessed by the improvement district, exemption will be the rule. See Waterworks Imp. Dist. No. 2 and Board of Improvement, supra, at n. 2. This assumes, however, that the property is used exclusively for public purposes. This will involve a fact question. See Holiday Island Suburban Improvement Dist. #1 v. Williams, 295 Ark. 442,749 S.W.2d 314 (1988).
3. If a city in county "A" owns property in county "B," which has improvement taxes, would the city in county "A" be responsible for the improvement taxes and assessments in county "B?"
Please see response to Question 2 above. The same reasoning will, in my opinion, apply with respect to municipal property located in an improvement district in another county.
4. If an improvement district becomes insolvent, what happens to the improvement district and debt?
I cannot, in the context of an opinion, speculate as to the potential ramifications in such an event. This will probably require reference to the particular statutes under which the district was organized, as well as any trust indenture or other instrument securing any outstanding bonds or other indebtedness of the district. In the event of a default on any debt, reference must be made to the remedies afforded under the relevant agreements. There are certain statutes providing for the appointment of a receiver if bonds are not timely paid. See, e.g., A.C.A. 14-92-235 (1987) (pertaining to suburban improvement districts) and 14-217-112 (1987) (consolidated public utilities). Again, however, a determination must first be made concerning the applicable statutes.
5. If two improvement districts, one water and one sewer, have common territory and there is a foreclosure on one property, is the one that foreclosed responsible for paying the improvement tax on the one that remains?
If the district that forecloses wishes to avoid a sale by the other district for subsequent installments of that district's assessments, it appears that the answer is "yes." See Deaner v. Gwaltney, 194 Ark. 332, 108 S.W.2d 600 (1937). In Deaner, title was apparently in a levee district, pursuant to a foreclosure, at the time of a sale by a drainage district. In response to a contention that the sale was void, the court stated:
 The drainage district and the levee district are separate districts, and have levied taxes based upon different benefits, which each may enforce without reference to the action of the other.
194 Ark. at 337.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] Under A.C.A. 26-34-101(b) (Repl. 1992), "[a]ll taxes assessed shall be a lien upon and bind the property assessed from the first Monday of January of the year in which the assessment shall be made. . . ."
[2] See Off-Street Parking Devel. Dist. No. 1 v. City of Fayetteville, supra, citing Waterworks Improvement Dist. No. 2 v. Logan County, 155 Ark. 257, 244 S.W. 4 (1922); Board of Improvement v. School District, 56 Ark. 335, 19 S.W. 969 (1892).